UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERNESTO MAGAT, *et al.*,<br><br>Defendants. | Case No. 14-cr-00627-SI-1<br><br>**ORDER DENYING DEFENDANT MAGAT'S MOTION TO DISMISS COUNTS OF THE INDICTMENT**<br><br>Re: Dkt. No. 54 |

On February 19, 2016, the Court held a hearing on defendant Magat's motion to dismiss the indictment, or in the alternative, for a bill of particulars. For the reasons set forth below, the Court hereby DENIES defendant's motion.

**BACKGROUND**

On December 16, 2014, the government filed a twenty-five count indictment against defendants Ernesto Magat, Behnam Halali, Kraig Jilge, Karen Gagarin and Alomkone Soundara a/k/a Alex Soundara. All defendants are charged with conspiracy to commit wire fraud in violation of 18 U.S.C § 1349 (Count One), wire fraud in violation of 18 U.S.C. § 1343 (Counts Two through Fifteen), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Counts Twenty-one through Twenty-five). Defendants Jilge, Halali and Magat are also charged with money laundering in violation of 18 U.S.C. § 1957 (Counts Sixteen through Twenty). The indictment also contains forfeiture allegations pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a), and 28 U.S.C. § 2461(c), seeking the forfeiture of "all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, or conspiracy thereto," as

well as "any property, real or personal, involved in any violation of 18 U.S.C. § 1957." Indictment ¶¶ 20, 22.

The following facts are alleged in the indictment. All defendants worked as independent contractors selling life insurance for American Income Life Insurance Company ("AIL") until they were fired or resigned in 2012. "From in or about September 2011, through in or about February 2012, the defendants, HALALI, MAGAT, JILGE, GAGARIN, and SOUNDARA, did knowingly and willfully conspire and agree with each other, and with other persons known and unknown to the Grand Jury, to devise, participate in, and execute a scheme to defraud AIL, and to obtain money from AIL by means of materially false and fraudulent pretenses, representations, and promises, and by omitting and concealing material facts." *Id*. ¶ 8. "The defendants executed the scheme by, among other things, submitting applications for life insurance on behalf of individuals who did not know that a policy was applied for or issued in their name and/or did not want a life insurance policy, and then shared the commissions and bonuses issued by AIL in connection with those fraudulent policies." *Id*. The indictment alleges that as a result of defendants' fraudulent scheme, the defendants and their co-conspirators caused AIL to pay more than $2.5 million in commissions and bonuses for fraudulent life insurance policies. *Id*. ¶ 10.

Under the "Manner and Means of the Scheme" section, the indictment alleges that the defendants and their co-conspirators did the following to carry out the conspiracy: (1) paid recruiters to find individuals who were willing to take a medical exam in exchange for approximately $100, and then they took the personal information associated with those individuals and submitted applications for life insurance in their names, in many cases without the individual's knowledge; (2) paid individuals to participate in a fictitious survey of a medical exam company, and then took the personal information associated with those individuals and submitted applications for life insurance, in many cases without the individual's knowledge; (3) solicited their family and friends to submit applications for life insurance, and told him that they would receive free life insurance for several months after which the policies would be canceled; (4) created fraudulent driver's licenses so they could take medical exams purporting to be the individuals in the applications; (5) opened hundreds of bank accounts to fund the premiums on the

1  fraudulent policies, and typically paid between one to four months of premiums before letting the
2  policies lapse; (6) purchased pre-paid telephones and set up Google Voice telephone numbers for
3  phone numbers listed on the fraudulent applications, and they returned verification calls to AIL
4  purporting to be the applicants on the fraudulent applications and confirmed the information in the
5  fraudulent applications; (7) listed addresses of gas stations and apartment complexes on many of
6  the fraudulent applications in an effort to avoid detection, and they fabricated the names of the
7  beneficiaries of the policies; and (8) exchanged e-mails in which they tracked the telephone
8  numbers and bank accounts associated with the fraudulent policies. *Id.* ¶¶ 9(a)-(i).

9  Now before the Court is defendant Magat's motion to dismiss the indictment, or in the
10  alternative, for a bill of particulars.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c) provides that an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." In the Ninth Circuit, an indictment is usually sufficient if it sets forth the elements of the offenses charged. *United States v. Fernandez*, 388 F.3d 1199, 1200 (9th Cir. 2004); *see also United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("In the Ninth Circuit the use of a 'bare bones' information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished." (alteration, citation, and internal quotation marks omitted)). In considering a motion to dismiss an indictment, the Court may not look beyond "the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment is sufficient to withstand a defendant's motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted).

## DISCUSSION

### I. Counts 1-15

Defendant contends that the conspiracy to commit wire fraud (Count 1) and wire fraud counts (Counts 2-15) "are pled in such a way that it is impossible for Magat to know what he did to commit these offenses or when he did such actions. Nor is it clear when he joined the conspiracy charged or whether it was one conspiracy with multiple objectives or multiple conspiracies." Dkt. 54 at 9:7-10. Defendant asserts that while the indictment alleges that the scheme involved submitting fraudulent applications for life insurance to obtain commissions and bonuses issued by AIL,[1] it is unclear what role, if any, Magat played in the scheme. Defendant notes that the indictment alleges that he was an independent contractor for AIL selling AIL life insurance, but that the indictment does not specify what he did as an independent contractor or whether he was authorized to submit a life insurance policy during the time of the conspiracy (September 2011 through February 2012). Defendant also complains that the indictment does not specify how the wire transfers from his Wells Fargo account to AIL's bank account in November and December 2011 furthered the conspiracy.

The Court finds that the indictment is sufficient. "An indictment . . . need only set forth the essential facts necessary to inform the defendant of what crime she is charged; it need not explain all factual evidence to be proved at trial." *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993). The "Manner and Means" section of the indictment alleges a number of specific actions taken by defendant and his co-defendants and co-conspirators in furtherance of the conspiracy to commit wire fraud. *See* Indictment ¶¶ 9(a)-(i). Similarly, the individual wire fraud counts allege that defendants "for the purpose of executing the material scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations,

---

[1] Somewhat inconsistently, defendant also asserts that the indictment does not adequately plead a conspiratorial agreement. However, as defendant acknowledges in his motion, the indictment charges that defendants engaged in a conspiracy to defraud AIL by, among other things, "submitting applications for life insurance on behalf of individuals who did not know that a policy was applied for or issued in their name and/or did not want a life insurance policy, and then shared the commissions and bonuses issued by AIL in connection with those fraudulent policies." Indictment ¶ 8. The Court finds that the indictment sufficiently alleges a conspiratorial agreement.

4

1  and promises, and by omission and concealment of material facts, did knowingly transmit and
2  cause to be transmitted [specific wire communications in interstate commerce]." *Id.* ¶ 14. The
3  wire fraud counts identify the approximate dates of the wire and nature of the wire
4  communications underlying each count. *See, e.g. id.* ¶ 14, Count 5 (identifying November 25,
5  2011 wire transfer of $409.60 from defendant Magat's Wells Fargo bank account to AIL's account
6  at Central National Bank). Thus, the indictment as a whole alleges that defendants engaged in a
7  conspiracy to commit wire fraud by, *inter alia*, submitting fraudulent life insurance applications,
8  opening bank accounts to fund the premiums on the fraudulent policies, and paying premiums on
9  the fraudulent policies before letting the policies lapse. The government is not required to allege
10 with any greater specificity how the particular wire communications furthered the conspiracy. *See*
11 *Woodruff*, 50 F.3d at 676.

12 Defendant also challenges Count 1 as duplicitous. "An indictment is considered
13 duplicitous if a single count combines two or more different offenses." *United States v. Renteria*,
14 557 F.3d 1003, 1007 (9th Cir. 2009). Defendant asserts that Count 1 charges multiple
15 conspiracies and that "[t]he evidence will show the disparate acts of several defendants, acting
16 without common plan or common objective. The nature of the acts, the identity of the participants
17 and the multiple agreements to commit separate crimes all point to the fact that multiple
18 conspiracies are alleged." Dkt. 54 at 16:1-4. The Court disagrees, and finds that the indictment
19 as framed alleges a single conspiracy to commit wire fraud by submitting fraudulent life insurance
20 applications. To the extent defendant makes assertions about what the evidence will show, those
21 arguments go beyond the face of the indictment. Similarly, defendant's arguments about a
22 possible variance between the allegations of the indictment and the government's proof at trial are
23 premature, and defendant may renew these arguments if appropriate at the time of trial.

24

25 **II.     Counts 18-20**

26 Counts 18 through 20 charge defendant with money laundering in violation of 18 U.S.C.
27 § 1957. The indictment alleges "[o]n or about the dates set forth below, in the Northern District of
28 California and elsewhere, the defendants specified below, did knowingly engage and attempt to

1   engage in the following monetary transactions in criminally derived property of a value greater
2   than $10,000, namely, the exchange of the funds below, those funds having been derived from
3   specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code,
4   Section 1343 . . . ." Indictment ¶ 16.  The indictment then states the approximate dates and
5   descriptions of the monetary transactions underlying each money laundering count. *See e.g. id*. at
6   ¶ 16, Count 18 (identifying December 28, 2011 cashier's check in the amount of $24,000 payable
7   to co-defendant Ben Halali from defendant's Bank of America account).

8   Defendant contends that the money laundering counts are insufficiently pled because the
9   indictment does not allege that defendant had specific knowledge that the money forming the basis
10  of Counts 18-20 was derived from the wire fraud charged in Counts 2-15.  However, the
11  indictment specifically alleges that defendants knowingly engaged in monetary transactions in
12  criminally derived property, "those funds having been derived from specified unlawful activity,
13  namely, wire fraud . . . ." *Id*. ¶ 16.  To the extent that defendant also asserts that "the indictment
14  needs to be more specific about the nature of the 'proceeds'" because "the offense conduct
15  potentially overlaps the change in the [money laundering] statute," Dkt. 54 at 12:16-18,
16  defendant's motion is misguided.  The change in the statute to which defendant refers (in which
17  Congress defined "proceeds" to mean "any property derived from or obtained or retained, directly
18  or indirectly, through some form of unlawful activity, including the gross receipts of such
19  activity") occurred in May 2009, and the indictment alleges that the money laundering counts are
20  based on money transactions that occurred in 2011 and 2012. *See* Pub. L. 111-21, 123 Stat. 1617;
21  Indictment at 6.  Consistent with the current statutory definition of "proceeds," the indictment
22  alleges monetary transactions in funds derived from wire fraud.

### III.   Count 22

25  Count 22 charges defendant with aggravated identity theft in violation of 18 U.S.C.
26  § 1028A(a)(1).  The indictment charges "[o]n or about the dates set forth below, in the Northern
27  District of California and elsewhere, the defendants specified below, did knowingly transfer,
28  possess, and use, without lawful authority, the means of identification of another person, namely,

the names, dates of birth, and Social Security numbers of the real individuals set forth below in connection with the issuance of life insurance policies, during and in relation to felony violations of Title 18, United States Code, Sections 1343 and 1349 [wire fraud statutes]." Indictment ¶ 18. The indictment alleges that defendant committed aggravated identity theft and wire fraud on November 15, 2011, in connection with a life insurance policy issued in the name of "V.M." *Id.* ¶ 18, Count 22.

Defendant argues that Count 22 is insufficient because it fails to allege that he knew the identification information he used belonged to another person or that V.M. did not authorize him to use that information. However, the indictment alleges that defendant "did *knowingly* transfer, possess, and use, *without lawful authority*, the means of identification of another person." *Id.* (emphasis added).

Defendant also challenges Count 22 on the ground that it does not allege any loss to V.M. This contention lacks merit. The statute does not require loss as an element of aggravated identity theft. The statute provides, "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). Further, the D.C. Circuit has expressly rejected defendant's argument. *See United States v. Reynolds*, 710 F.3d 434, 439 (D.C. Cir. 2013); *cf. United States v. Louderman*, 576 F.2d 1383, 1387 (9th Cir. 1978) (holding that, in a wire fraud case, "the prosecution need not prove that the scheme was successful or that the intended victim suffered a loss or that the defendant secured a gain") (internal quotation marks omitted).

### IV.  Bill of Particulars

In the alternative, defendant seeks a bill of particulars outlining the government's case against defendant. When deciding whether a bill of particulars should issue, courts are instructed to "consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d

1044, 1054 (9th Cir. 1983). For the reasons set forth above, the Court concludes that the indictment is sufficient to apprise defendant of the charges against him.

## CONCLUSION

For the reasons set forth above, the Court DENIES defendant Magat's motion to dismiss the indictment, or in the alternative, for a bill of particulars.

**IT IS SO ORDERED**.

Dated: February 19, 2016   _____
SUSAN ILLSTON
United States District Judge